IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| CINDY D. HENSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:20-cv-00145-O-BP |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Cindy Henson seeks judicial review of the Commissioner's decision denying her application for disability benefits under the Social Security Act ("SSA"). After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this case for further administrative proceedings where the ALJ (1) complies with the provisions of SSR 18-3p governing when and how a claimant's noncompliance with medical treatment should be determined; and (2) examines Henson's GAF scores and explains his conclusion regarding their evidentiary value.

**I.      STATEMENT OF THE CASE**

Henson seeks disability benefits under Titles II and XVI of the SSA. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 17-1 at Tr. 10, 198-210; *see also* ECF No. 20 at 5. She applied for disability benefits in 2018 (Tr. 198-210) and reported disabilities of "major infection in blood," "kidney infection/kidney issues," "blood pressure," and "diabetic issues." Tr. 249. The Commissioner denied Henson's application initially and upon reconsideration. Tr. 123-28, 131-

34. Thereafter, Henson requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 135), who conducted a video hearing (Tr. 10, 172, 181) at which Henson and a vocational expert ("VE") testified (Tr. 33-67). The ALJ found that Henson was not disabled. Tr. 10-27.

The ALJ proceeded through the sequential evaluation process. At step one, he found Henson had not engaged in substantial gainful activity since March 26, 2017. Tr. 13. At step two, he noted "[t]he claimant has the following severe impairments: obesity, diabetes, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c))." *Id.* At step three, he determined Henson's impairments do not meet or medically equal those listed in the Listing. Tr. 16. Before proceeding to step four, the ALJ assessed Henson's RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant may use an assistive device for standing, walking, and balancing. The claimant would have non-exertional limitations in that she would be limited to work that is of *Specific Vocational Preparation* (SVP) level 3 or less as defined in the *Dictionary of Occupational Titles* (DOT). The claimant would have the ability to understand, remember, and carry out detailed written or oral instructions; set realistic goals; and plan independently of others. The claimant would have the ability to interact appropriately with supervisors, coworkers, and the public.

Tr. 18. The ALJ found at step four that Henson could not perform her PRW as a Customer Complaint Clerk, Driver, or Case Worker, Protective Services. *Id.* at 24. At step five, the ALJ considered Henson's RFC and found that she could perform work as an Office Helper, Cafeteria Attendant, or Furniture Rental Clerk, and that a significant number of these jobs are available in the national economy. Tr. 25-26.

After the Social Security Appeals Council denied further administrative review (Tr. 1-4), Henson filed this action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision

does not become final until after the Appeals Council makes its decision denying the claimant's request for review.").

## II.  STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list ("the Listing"). *See* 20 C.F.R. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any

other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

**III.     ANALYSIS**

Henson challenges (1) whether substantial evidence supports denial of her application, and (2) whether the ALJ applied correct legal standards in reaching his decision. *See* ECF No. 20 at 5. Henson argues no substantial evidence supports the ALJ's decision because "[t]he ALJ did not identify any medical opinion that was the basis for his determination of [her] RFC." *Id.* Henson argues the ALJ applied incorrect legal standards because "[a]n ALJ cannot determine RFC based upon assumed compliance with treatment without following the safeguards set forth in SSR 18-3p," but "[t]he ALJ relied upon Henson's non-compliance with treatment when reaching his conclusion." *Id.*

Henson asserts the ALJ committed numerous errors in the evaluation process. She claims the ALJ "relied on [her] non-compliance with treatment in crafting the RFC finding . . . [and] erred harmfully in failing to comply with the safeguards for considering noncompliance." ECF No. 20 at 14. She further contends the ALJ "did not identify any medical opinion that was the basis for his determination of Henson's RFC" and that the "ALJ's RFC assessment is not supported by substantial evidence when it is based upon her [sic] lay interpretation of the objective medical data." *Id.* at 21. Henson contends this was harmful error warranting reversal of the ALJ's decision:

> The correct method for determining RFC is to take the claimant's functioning as it appears in the record, even if the individual is not compliant with treatment, and determine the RFC. If that RFC results in a finding of disabled, then the ALJ must make findings to determine if the claimant has a good reason for not following the prescribed treatment. SSR 18-3p sets forth the Commissioner's policy and describes the specific criteria necessary for a finding of failure to follow prescribed treatment under 20 CFR §§ 404.1530, 416.930. SSR 18-3p provides that "[w]e only perform the failure to follow prescribed treatment analysis discussed in this SSR after we find that an individual is entitled to disability . . . under Title[] II . . . regardless of whether the individual followed the prescribed treatment." The ALJ did not follow the procedural safeguards.

*Id.* at 17-18 (internal citations omitted).

>     A.   **The ALJ erred by improperly considering Henson's noncompliance with treatment when evaluating her RFC, warranting remand.**

Henson argues that under SSR 18-3p, the regulatory successor of SSR 82-59, an ALJ can only analyze a claimant's noncompliance with treatment after the sequential analysis has concluded with a finding of disabled. *Id.* at 17 & n.2. She asserts that by incorporating noncompliance into his RFC finding, the ALJ improperly considered her non-compliance before finishing the five-step evaluation and determining whether she was disabled independently of that factor. *Id.* As Henson puts it: "[a]n ALJ cannot circumvent the requirements of SSR 18-3p by couching his analysis of noncompliance in terms of an RFC determination." *Id.* at 18.

Issues concerning SSR 18-3p usually arise in the context of explicit noncompliance determinations. By its terms, this occurs at step five, after a claimant has been found disabled, or at step three, if the claimant's conditions meet or medically equal a condition in the Listing. 20 C.F.R. pt. 404, subpt. P, app. 1. *See* SSR 18-3p: Titles II and XVI: Failure to Follow Prescribed Treatment, 83 Fed. Reg. 191, 49616(F) (Oct. 29, 2018) ("When we make a failure to follow prescribed treatment determination within the sequential evaluation process"). Neither occurrence happened here since the ALJ did not find Henson disabled at step five and did not conclude at step three that Henson's conditions met or equaled a condition in the Listing. But Henson contends SSR 18-3p "can also apply where the ALJ makes an implicit or explicit determination of noncompliance." ECF No. 20 at 18. She argues rules governing an ALJ's noncompliance determination apply to her case, even though the ALJ never made a noncompliance determination, because "[t]he ALJ's ultimate finding that Henson was not disabled was based significantly on the ALJ's perception that Henson's failure to follow a prescribed treatment caused the condition to be worse than it might otherwise be." *Id.* (cleaned up). She claims this was prejudicial because "the

6

ALJ should have based the RFC on the exacerbated symptoms and limitations he found in the record rather than reduce them to account for treatment compliance." *Id.*

Defendant disagrees. As Defendant sees it, references to Henson's noncompliance were part and parcel of the ALJ's holistic RFC analysis, which considered an array of factors and was "based . . . on the credible medical, testimonial, and documentary evidence of record." ECF No. 21 at 4. As such, Defendant characterizes Henson's criticism as "misplaced" and argues the "ALJ may consider a claimant's failure to follow prescribed treatment, along with other evidence, when he evaluates the claimant's allegations of disability." *Id.* at 5.

Defendant notes "[t]he ALJ did not purport to deny disability benefits to Plaintiff on the ground that she failed to follow prescribed treatment." *Id.* RFC evaluations are "administrative assessments" based on "the totality of the evidence," and Defendant suggests the ALJ would not be doing his job if he *did not* consider what appears to be habitual noncompliance on Henson's part. *Id.* at 4-8 (referencing 20 C.F.R. §§ 404.1545, 416.945). Ultimately, Defendant argues the ALJ applied correct legal standards to the RFC analysis because "the ALJ did not rely exclusively or excessively on Plaintiff's compliance with treatment, or any other factor, when he evaluated Plaintiff's disability claim." *Id.* at 5.

Because RFC determinations are based on "the totality of the evidence," ALJs must consider all germane evidence when reaching their RFC conclusion. *See* 20 C.F.R. §§ 404.1545; 404.1560. The Court's job is not to peer over their shoulder and scrutinize how or why they considered noncompliance, but simply to ask two questions: (1) did they follow correct legal standards; and (2) does substantial evidence in the record support their conclusion, however reached? *Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1382. While ALJs may consider a claimant's noncompliance with treatment, they can only determine noncompliance after they find a claimant

is disabled, which typically occurs at step five, or in cases where a claimant's conditions meet those set in 20 C.F.R. pt. 404, subpt. P, app. 1, at step three.

When considering noncompliance, an ALJ must apply SSR 18-3p unless the ALJ considers noncompliance as part of a credibility determination. *See Mitchell v. Colvin*, No. 3:11-cv-02664-BN, 2013 WL 4546729, at *7 (N.D. Tex. Aug. 28, 2013) ("Before making a finding of noncompliance, the ALJ is required to follow various requirements [outlined in SSR 18-3p] . . . [b]ut an ALJ is entitled to consider noncompliance . . . if the noncompliance is being considered only as part of the credibility determination."). Thus, the analysis is framed by three inquiries: (1) did the ALJ determine compliance at the proper time; (2) if not, did the ALJ consider noncompliance as part of a credibility determination; and (3) if no to both (1) and (2), was the consideration of noncompliance substantial enough to rise to the level of an "implicit determination," such that the ALJ erred in not adhering to SSR 18-3p? *See Johnson v. Commissioner*, No. 3:11-cv-03126, 2013 WL 632104, at *20 (N.D. Tex. Feb. 4, 2013), *rec. adopted*, 2013 WL 628561 (N.D. Tex. Feb. 20, 2013).

### 1. The ALJ considered Henson's noncompliance in his RFC evaluation.

It is not improper for an ALJ to consider treatment compliance—indeed a finding of noncompliance with medical treatment may preclude a disability finding in certain cases. *See* 20 C.F.R. § 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled."). SSR 18-3p establishes the procedures ALJs must follow when making this determination. *See* SSR 18-3p, 83 Fed. Reg. 191, 49616. The threshold question, then, is whether the ALJ considered Henson's noncompliance at the proper time.

An analysis under SSR 18-3p typically occurs when the ALJ explicitly determines compliance or noncompliance. *Id.* As noted above, this occurs either at step five of the sequential

evaluation (if disability is found) or step three (if the claimant has a condition that meets or medically equals one enumerated in the Listing). *See Johnson*, 2013 WL 632104, at *20. But SSR 18-3p "can also apply where the ALJ makes an implicit or explicit determination of noncompliance . . . prior to [step 3 or] step 5." *Id.*; *see also Simmons v. Berryhill*, No. 4:17-cv-00684-A-BJ, 2018 WL 3900912, at *5 (N.D. Tex. July 31, 2018), *rec. adopted*, 2018 WL 3873664 (N.D. Tex. Aug. 15, 2018); *Mitchell*, 2013 WL 4546729, at *7. If the ALJ makes such a determination, SSR 18-3p applies, even if the ALJ's opinion contains no formal or explicit compliance determination. It is the substance of the consideration—not the presence of certain magic words—that indicates an ALJ has determined noncompliance. *Mitchell*, 2013 WL 4546729, at *7.

The ALJ clearly considered Henson's noncompliance in his RFC evaluation, which references noncompliance sixteen times in eight pages. *See* Tr. 20-28. Henson argues this prejudicially slanted his RFC finding. ECF No. 20 at 14-19. But ALJs can discuss noncompliance shown in the record before them, and their doing so does not automatically warrant reversal. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Jones v. Saul*, No. 7:19-cv-00143-O-BP, 2020 WL 3848187, at *6 (N.D. Tex. June 22, 2020), *rec. adopted*, 2020 WL 3844141 (N.D. Tex. July 8, 2020). Having established the ALJ considered Henson's noncompliance when evaluating her RFC, the Court must next ask whether he considered it as part of a credibility determination, in which case SSR 18-3p would not apply.

### 2. The ALJ did not consider Henson's noncompliance as part of a credibility determination.

Nothing in the record indicates the ALJ was considering Henson's noncompliance with treatment as part of a credibility determination. His references to compliance or noncompliance relate to improvements or deteriorations in Henson's medical condition. *See* Tr. 20-28. This shows the ALJ considered Henson's noncompliance as part of his actual RFC evaluation; a consideration

the law does not permit. *Simmons*, 2018 WL 3900912, at *4; *see also Mitchell*, 2013 WL 4546729, at *8 (finding the ALJ's failure to apply SSR 82-59, now SSR 18-3p, when evaluating RFC prejudiced the claimant). In her brief, the Commissioner likewise states the ALJ considered Henson's noncompliance when evaluating whether "her symptoms were so severe as to be disabling." ECF No. 21 at 5.

Defendant contends the ALJ considered Henson's noncompliance as a means of understanding the true severity of her subjective symptoms. *Id.* Severity evaluations of subjective symptoms are so connected to credibility determinations that many courts allow considerations of noncompliance when conducting such an evaluation. *See, e.g.*, *Clark v. Astrue*, No. 4:12-cv-0350, 2013 WL 105017, at *7 (S.D. Tex. Jan. 8, 2013) ("It is true, as Defendant argues, that SSR [18-3p] need not be followed when the ALJ considers the claimant's non-compliance only in connection with the claimant's credibility and with the severity of the claimant's subjective symptoms."). While the ALJ discussed noncompliance in the sole paragraph devoted to Henson's subjective reports of severity, *see* Tr. 23, the bulk of his references to noncompliance involved objective conditions like deep vein thrombosis (Tr. 20), a pulmonary embolism (*id.*), diabetes (*id.*), and various mental health conditions (Tr. 21).

Defendant is not wrong in arguing an "ALJ may consider a claimant's failure to follow prescribed treatment, along with other evidence, when he evaluates the claimant's allegations of disability." *Id.* at 5. While ALJs may consider noncompliance with treatment when evaluating disability claims, they must do so while applying the procedural safeguards of SSR 18-3p unless considering compliance for the narrow purposes of determining credibility and evaluating the severity of subjective symptoms. The ALJ's consideration of Henson's noncompliance does not fall into the credibility exception. Thus, if the ALJ's consideration of noncompliance was so

pervasive as to be "an implicit determination of noncompliance," he erred harmfully by not adhering to SSR 18-3p.

### 3. The ALJ implicitly determined Henson's noncompliance when evaluating her RFC, warranting remand.

Because SSR 18-3p applies to noncompliance "determinations," the Court must determine whether the ALJ considered compliance as one of many factors in a whole-record analysis, such that reversal is not warranted, or whether he so substantially relied upon noncompliance that his consideration was "an implicit determination" of noncompliance, such that reversal is warranted. *Compare Lindsey v. Astrue*, No. 3:09-cv-01649, 2011 WL 817173, at *8 (N.D. Tex. Mar. 9, 2011) (reversing because the ALJ "circumvent[ed] the requirements of SSR [18-3p] . . . by couching his analysis of . . . noncompliance in terms of an RFC determination") *with Jones*, 2020 WL 3848187, at *6 (distinguishing *Lindsey* and affirming because "in *Lindsey*, the ALJ relied almost exclusively on substance abuse and noncompliance with prescribed treatment to determine the plaintiff's RFC. Here, the ALJ discussed and considered a variety of . . . other evidence.") (citations omitted).

At issue is whether the ALJ effectively assumed Henson's noncompliance without the safeguards of SSR 18-3p when reaching his RFC conclusion. *Simmons*, 2018 WL 3900912, at *4; *Lindsey*, 2011 WL 817173, at *8. If he did, Henson was prejudiced and the resulting RFC is tainted, because RFC should be determined independently of noncompliance. *See Simmons*, 2018 WL 3900912, at *5 ("In other words, if the ALJ's ultimate finding that a claimant was not disabled is based significantly on the ALJ's perception that the plaintiff's failure to follow a prescribed treatment caused the condition to be worse than it might otherwise be, then the requirements of [SSR 18-3p] apply."). As noted above, the ALJ found Henson not disabled at step five because jobs existed in significant numbers in the national economy he believed she could perform. Tr. 26.

In discussing the evidence upon which this conclusion was based, the ALJ repeatedly referenced Henson's compliance with different treatment plans. *See* Tr. 20-28.

Based on the substantial role Henson's noncompliance played in the ALJ's RFC analysis, it appears he assumed her noncompliance when determining her RFC. The ALJ consistently noted her conditions improved with treatment compliance and repeatedly blamed exacerbations in her conditions on noncompliance. *Id.* In so doing, he disregarded her current conditions, as reflected in the evidentiary record before him, and based his decision on presumed positive effects from theoretical future compliance. *See, e.g.*, Tr. 24 ("While the claimant experiences symptoms related to recurrent thromboses, diabetes, anxiety, and depression, these symptoms are generally controlled by medication. The claimant has routinely been noncompliant . . . [t]aking the entirety of the evidence into consideration, the claimant is limited to no greater degree than that assessed in the above [RFC]."). Consequently, the ALJ failed to reach his RFC conclusion independently of compliance considerations and did not follow the procedural safeguards in SSR 18-3p regarding failure to follow prescribed treatment. *See Simmons*, 2018 WL 3900912, at *5.

Defendant notes the ALJ never said his denial was based on Henson's "fail[ure] to follow prescribed treatment." ECF No. 21 at 5. The Court has rejected this argument in the past. In Simmons, the Court noted:

> The ALJ did not expressly purport to deny claimant benefits on the ground that she failed to follow prescribed treatment, but his comments, quoted above, and his ultimate finding that claimant is not disabled rest, in significant part, on his expressed perception that her failure to follow a prescribed treatment caused her condition to be worse than it might otherwise be.

*Simmons*, 2018 WL 3900912, at *5-6 (citing *Ibarra v. Commissioner*, 92 F. Supp. 2d 1084, 1087 (D. Or. 2000). The same is true here, and Defendant's contentions otherwise are unpersuasive. Thus, the ALJ erred by not applying SSR 18-3p, and Judge O'Connor should remand this case for

further administrative proceedings in which the ALJ employs the procedural safeguards of SSR 18-3p if he considers noncompliance other than at step five after determining disability, at step 3 if he determines Henson's conditions meet or equal a condition in the Listing, or if he references noncompliance when making a determination of Henson's credibility.

>  **B.     The ALJ erred by failing to provide any discussion of Henson's Global Assessment of Functioning ("GAF") scores, warranting remand.**

Henson argues "[t]he ALJ erred in relying upon her lay interpretation of the raw medical data to determine RFC." ECF No. 20 at 23. She specifically disagrees with the ALJ's handling of mental health evidence in the record and accuses the ALJ of "playing doctor" with respect to certain evidence. *Id.* at 24. Evidentiary conflicts "are for the [Commissioner], and not the Courts, to decide." *Brown*, 192 F.3d at 496 (alteration in original) (quoting *Selders*, 914 F.2d at 617). Rather, the Court must ensure the decision is supported by substantial evidence and is the product of correct legal standards. *Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1382. But because the ALJ rejected Henson's GAF scores without explanation, the Court cannot determine if the decision was based upon whole-record review and grounded in substantial evidence.

Henson observes that "[n]otably, the ALJ did not mention or cite to [her] GAF scores." ECF No. 20 at 24. She argues "[t]he ALJ's failure to consider the reported GAF scores is error" warranting remand. *Id.* An ALJ "cannot reject a medical opinion without providing an explanation for that rejection, even if good reasons exist for disregarding the opinion. Failure to explain the rejection of a medical opinion justifies a remand." *Winston v. Berryhill*, 755 F. App'x 395, 398 (5th Cir. 2018) (citing *Kneeland v. Berryhill*, 850 F.3d 749, 759-61 (5th Cir. 2017)). Defendant rebuts that "the Commissioner has no obligation to ascribe special significance to [] GAF scores" and argues "the GAF scale is intended for clinicians . . . making treatment decisions, rather than ALJs . . . making disability determinations." ECF No. 21 at 7.

13

While the Commissioner need not afford undue weight to GAF scores, it is incorrect to state GAF scores are "for clinicians" rather than "ALJs who are making disability determinations." *Id.* And while the ALJ need not explain every contour of his reasoning, it is not an "unnecessarily rigid approach," as Defendant suggests, *see id.*, to require explanations if the ALJ is unpersuaded by GAF scores. The SSA's internal instructions (AM-13066-REV) and Fifth Circuit precedent require ALJs to explain why such evidence does not persuade them. *See, e.g.*, *Kneeland*, 850 F.3d 749; *Jackson v. Colvin*, No. 4:14-cv-00759-A, 2015 WL 7681262 (N.D. Tex. Nov. 5, 2015), *rec. adopted*, 2015 WL 7582339 (N.D. Tex. Nov. 25, 2015). In *Kneeland*, the Fifth Circuit remanded an ALJ's decision because the ALJ rejected an expert's medical opinion without explanation. 850 F.3d at 759. The Fifth Circuit panel explained "[t]he ALJ's root error was failing to address—or even mention—[the expert's] opinion in his decision." *Id.* at 761. Whether the ALJ "did not consider [the expert's] opinion, or considered it but assigned it no weight," was irrelevant; the Fifth Circuit concluded remand was appropriate. *Id.* "If the former, remand [was] appropriate for consideration of [the expert's] opinion. If the latter, remand [was] appropriate for an explanation of the rejected medical opinion, or an explanation of what weight was assigned." *Id.*

In *Jackson*, this Court applied a similar rationale to an ALJ's review of a claimant's GAF scores. 2015 WL 7681262, at *3–5. After noting "[f]ederal regulations and Social Security Rulings explicitly require that an ALJ must evaluate 'every medical opinion' of record," the Court referenced AM–13066–REV's instruction that GAF scores "should be treated as opinion evidence." *Id.* at *3 (quoting 20 C.F.R. §§ 404.1527, 416.927). The Court concluded that, even if "the ALJ failed to properly evaluate [the claimant's] GAF ratings," remand would be unnecessary because "the ALJ's decision [was] supported by substantial evidence in the record." *Id.* at *5. And while the ALJ in *Jackson* "did specifically consider such scores as he reported them throughout

14

his decision," *id.*, the ALJ here did not mention Henson's' GAF scores. "Such an error makes it impossible to know whether the ALJ properly considered and weighed an opinion, which directly affects the RFC determination." *Kneeland*, 850 F.3d at 762.

Defendant's brief spent several pages attempting to undermine the merits of GAF scores as an evidentiary source and rightly observed that "[e]ven low GAF scores do not necessarily constitutes evidence of a significant functional limitation." ECF No. 21 at 7-8. This is true, as is Defendant's assertion that "[i]nstead of viewing GAF scores as absolute determiners of disability, ALJs should make disability determinations on a case-by-case basis, and, as in this case, consider the entire record (Tr. 10-27)." *Id.* at 8. But even so, the ALJ did not "provid[e] an explanation" for disregarding Henson's GAF scores. *Winston*, 755 F. App'x at 398. Such an omission constitutes reversible legal error "even if good reasons exist for disregarding the opinion." *Id.*

The ALJ, not the Court, must decide what weight to afford Henson's GAF scores, and the ALJ must explain his conclusion. Accordingly, his failure to reference and "explain the rejection of" Henson's GAF scores "justifies a remand." *Id.* While his error might would be harmless if Henson's GAF scores were in a range indisputably irrelevant for the RFC determination, Henson was consistently assessed as having a GAF score of 49—which is consistent with serious impairment. *See* Tr. 2145, 2164, 2473, 2482, 2492, 2504, 2565, 2578, 2600, 2611. Even if the ALJ ultimately decided to afford controlling weight elsewhere within the evidentiary record, not referring to Henson's GAF scores, consistent with severe impairment, was harmful error. *See Ayala v. Saul*, No. 7:19-cv-00024-O-BP, 2020 WL 1226879, at *1 (N.D. Tex. Mar. 13, 2020). Consequently, Judge O'Connor should remand this case for further administrative proceedings so the ALJ can reexamine Henson's GAF scores and properly explain his evidentiary conclusions concerning those scores.

## IV.  CONCLUSION

The ALJ erred in two respects: (1) by determining noncompliance in his RFC evaluation without following the procedural safeguards set forth in SSR 18-3p; and (2) by not referencing Henson's GAF scores and explaining if and how he interpreted those scores. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **REVERSE** the Commissioner's decision and **REMAND** this case for further administrative proceedings consistent with these findings, conclusions, and recommendation.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on December 14, 2021.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE